## Hamlet v. Davis et al.

(Decided June 24, 1932.)

JOSEPH J. HANCOCK, for appellant.

WRIGHT & WRIGHT, STUART E. LAMPE, JOHN W. WATKINS, and R. D. McAFEE, for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The appellant challenges the constitutional right of a justice of the peace to try and determine civil causes,

but concedes his authority to try and dispose of criminal cases.

The office of justice of the peace is more ancient than the first Constitution of Kentucky. It was recognized and authorized by the first, second, third, and present Constitution of Kentucky. The powers of the office of justice of the peace existed long prior to the origin of the title justice of the peace. It is unnecessary to look either to the time or origin of their authorization or the title of the office.

A justice of the peace in England was any inferior magistrate, commissioned under the great seal to keep the peace within the jurisdiction for which he was appointed. Coke stated: "The whole Christian world has not a like office of justice of the peace if duly executed." Cooper described them as: "Men sometimes illiterate, and frequently bigoted and prejudiced." Originally, they performed their services without reward, and their court when in session more nearly resembeld a convention of the citizenry of the vicinage. In more ancient times they were commissioned by the King as conservators of the peace. There were justices for the county, for boroughs, for municipal corporations. The mayor of the borough was ex officio a justice during his term of office. The chairman of the county council was ex officio a justice of the peace for the county; so was the chairman of the urban or rural districts. As time passed and civilization developed, the population increased, and, as the needs thereof required, justices of the peace were commissioned by the crown with jurisdiction in cases arising under both civil and criminal law. It should be presumed that the framers of our Constitution knew the history of the courts of justice of the peace at the time of the framing of the several constitutions. The title "justice of the peace" was used by them in each of our Constitutions to designate a court as it was known and recognized generally by the law of England. Since the adoption of the first Constitution of Kentucky, the jurisdiction of a justice of the peace, under statutes enacted in pursuance of the several Constitutions of Kentucky, was both civil and criminal.

Section 142 of the Constitution of Kentucky provides:

"The jurisdiction of justices of the peace shall be co-extensive with the county, and shall be equal

and uniform throughout the state. Justices of the peace shall be conservators of the peace.''

This section vests the Legislature with power to confer upon justices of the peace such civil and criminal jurisdiction as it may desire. It is substantially section 6 of article 5 of the first, section 6, article 4 of the second, and section 34 of article 4 of the third Constitution. The General Assembly, by virtue of the authority of those sections of the several Constitutions of Kentucky, has conferred on justices of the peace jurisdiction of both civil and criminal causes. They have exercised this jurisdiction by reason of varying statutes without a challenge of their jurisdiction to try civil cases, so far as we are able to find until this case, continuously since the 13th day of April, 1792, the date of the first Constitution of Kentucky.

The appellant argues that section 142 especially declares that a justice of the peace ''shall be a conservator of the peace,'' and that the Constitution designates the courts therein created and provides that none other shall be created, and the court of a justice of the peace is not named in it. The mere reading of section 142 is a complete answer to the second argument.

Section 113 of the Constitution provides that judges of the court of appeals shall, by virtue of their office, be ''conservators of peace throughout the state.'' The Constitution regards circuit judges as ''conservators of the peace.''

Section 140 of the Constitution denotes a judge of the county court a ''conservator of the peace.'' If the denomination by the Constitution of a justice of the peace as a ''conservator of the peace'' thereby limits the power of the Legislature to confer upon a justice of the peace only criminal jurisdiction, reasoning by analogy, the Constitution conferring on judges of the court of appeals, circuit, and county judges, the power of ''conservators of the peace,'' therefore limits their jurisdiction to criminal cases. The Constitution merely created these courts, including justices of the peace, and leaves the fixing of their respective jurisdictions to the Legislature. The appellant presents no authority, logic, or reason supporting his contention.

The atom is defined as ''one of the minute indivisible particles of which, according to atomism, the universe is composed.'' Webster's New International Dictionary.

The scientists have labored to split successfully the atom. The task of distinguishing to any degree between the constitutional jurisdiction of a justice of the peace to try a civil action from that of a criminal prosecution is not less doubtful, if not as impossible, as that of the scientists to split the atom.

We are convinced that a disseverance of the civil and criminal jurisdiction of justices of the peace, as conferred by the Constitution and the statutes enacted in pursuance thereof, cannot be accomplished by either the learning and wisdom of the academicians or the profoundest consideration of an assembly of philosophers.

On the 17th day of October, 1930, Theora Davis filed an action against Selma B. Hamlet in the court of James C. Rothenberg, justice of the peace of Jefferson county, of the first magisterial district. A judgment was entered against Hamlet for $45 and costs. On the 28th day of January, 1931, an execution was issued on it and placed in the hands of a constable of Jefferson county for execution, who levied it on certain property of the appellant. The constable, by virtue of the execution, posted notice of sale. The appellant brought this action to enjoin the execution of the judgment against the plaintiff in the execution, the justice of the peace, and constable, asserting that the statute conferring jurisdiction on the justice was unconstitutional. The circuit court sustained a demurrer and dismissed the petition. Hamlet appeals. It is apparent from what we have stated no error was committed in sustaining the demurrer.

Judgment affirmed.